ORAL ARGUMENT NOT YET SCHEDULED

No. 24-1200 (and consolidated cases)

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

City Utilities of Springfield, Missouri,
*Petitioner,*

v.

Environmental Protection Agency and Michael S. Regan, in his official capacity, as Administrator of the U.S. Environmental Protection Agency,
*Respondents.*

On Petition for Review of Action by the U.S. Environmental Protection Agency

## MOTION OF THE STATE OF OHIO TO INTERVENE IN SUPPORT OF PETITIONERS

DAVE YOST
Attorney General of Ohio

T. ELLIOT GAISER*
Solicitor General
 *Counsel of record*
MATHURA J. SRIDHARAN
KATIE ROSE TALLEY
Deputy Solicitors General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
thomas.gaiser@ohioago.gov

*Counsel for State of Ohio*

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27 and Circuit Rules 15(b) and 27, the State of Ohio respectfully requests leave to intervene in support of Petitioner City Utilities of Springfield, Missouri, in the above-captioned petition for review and consolidated petitions.

This petition challenges the EPA's final action under Subtitle D of the Resource Conservation and Recovery Act of 1976 to promulgate the "Disposal of Coal Combustion Residuals From Electric Utilities; Legacy CCR Surface Impoundments," 89 Fed. Reg. 38,950 (May 8, 2024) ("Rule"). For the reasons below, this litigation directly concerns Ohio, and Ohio has a substantial interest in the outcome. Counsel for Respondents reserve their position pending review of this Motion.

## INTRODUCTION

This action challenges the validity of the EPA's Final Rule regulating—for the first time—long-closed and inactive disposal sites for "coal ash" at inactive facilities. The Rule directly bears on Ohio's coal-combustion regulations, which must be "equivalent to" those imposed under federal regulation. *See* Ohio Rev. Code §3734.48(B). And it will impose immense costs on Ohio's coal-fired power industry.

The EPA's authority to regulate solid waste, including coal combustion residuals ("CCR"), flows from the Resource Conservation and Recovery Act ("the Act"). Section 4004(a) authorizes the EPA to regulate waste that poses a

"reasonable probability of adverse effects" to people or the environment, including CCR.  42 U.S.C. §6944(a).  The EPA's first attempt to regulate CCR was in 2015, when it promulgated 40 C.F.R. §257 *et seq*.  The 2015 rule established national minimum criteria for "existing and new" CCR landfills and surface impoundments to prevent groundwater contamination, among other risks.  40 C.F.R. §257.50(a) – (b); 80 Fed. Reg. 21,302, at 21,468–21,469 (April 17, 2015).  The 2015 rule did not cover "legacy" CCR sites—inactive surface impoundments at facilities that were inactive prior to October 14, 2015.  *Id.* §§257.50(c)–(d), 257.53; 80 Fed. Reg. at 21,468–21,469.  Many of these inactive sites at inactive facilities have been formally "closed," meaning that they have been, and are, subject to extensive State closure and post-closure regulations, including groundwater monitoring requirements, establishing safe waste storage.  *See, e.g.*, Comments of Ohio Utilities and Generation at 4, EPA Docket No. EPA-HQ-OLEM-2020-0107 (July 17, 2023), https://perma.cc/3KMQ-QPL5.

In 2018, this Court held the prior legacy exemption was arbitrary and capricious because the EPA did not offer a reasoned explanation and failed to "consider an important aspect of the problem." *Utility Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 430, 432–34 (D.C. Cir. 2018).  The EPA then promulgated this Rule.  But this Rule, too, ends in the same problematic result:  the Rule and the process by

which it was promulgated are arbitrary, capricious, and otherwise unlawful. *First*, the Rule broadly covers any amount of CCR placed on land on or after October 19, 2015, 89 Fed. Reg. at 39,100, with a one-size-fits-all approach, regardless of the type of disposal site. 40 C.F.R. §257.100(a), 89 Fed. Reg. at 39,105. That sweeps in many closed sites that do not pose a "reasonable probability" of environmental risk. 42 U.S.C. §6944(a). The EPA also failed to consider adequately the tremendous cost of opening and re-closing formerly closed sites. Relatedly, the EPA failed to provide an adequate notice-and-comment period that could have further highlighted these important aspects of the problem.

Ohio's interests in this action and the validity of the Rule are twofold. First, Ohio is statutorily required to implement a coal-combustion residual program that is tied to the federal regulations promulgated under 40 C.F.R. §257. The Rule vastly expands the Ohio EPA's regulatory obligations and the time, effort, and expenditures necessary to implement Ohio's state-run program. Just as it does on the State itself, the Rule also imposes substantial compliance burdens on Ohio's numerous power-plant operators—both current *and past* operators.

## ARGUMENT

A motion to intervene "must be filed within 30 days after the petition for review is filed and must contain a concise statement of the interest of the moving

3

party and the grounds for intervention." Fed. R. App. P. 15(d). Because Rule 15(d) offers no additional standards for intervention, courts look to the "statutory design of the act" and the rules governing intervention under Federal Rule of Civil Procedure 24. *See Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 551 (5th Cir. 1985); *see also Bldg. & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282–83 (D.C. Cir. 1994).

Intervention of right pursuant to Rule 24(a) is appropriate when: (1) the application is timely; (2) the applicant has an interest relating to the subject of the action; (3) as a practical matter, disposition of the action may impair or impede the applicant's ability to protect that interest; and (4) the existing parties do not adequately represent the applicant's interest. *Bldg. & Constr. Trades Dep't*, 40 F.3d at 1282. Any movant "who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Rep. of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (citation omitted). Ohio satisfies these criteria and should be granted intervention of right.

Alternatively, Ohio seeks permissive intervention under Rule 24(b). Rule 24(b) allows intervention if the intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Ohio has, at a minimum, met the more-relaxed standard for permissive intervention.

1. **This application is timely.**

The final Petition for Review was filed and consolidated in this Court on August 9, 2024. This Motion for Leave to Intervene is timely because it is filed within 30 days of that date. Fed. R. App. P. 15(d). Further, no party would be prejudiced by granting Ohio's Motion. *See United States v. British Am. Tobacco Australian Servs.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006). This litigation is at its inception: the case has been stayed through August 21, 2024, and this Court has not yet set a schedule for proceedings. *See* Doc. #2065397 (July 18, 2024 Order). Permitting Ohio to intervene will not unduly delay this case.

2. **Ohio has a substantial interest in this action.**

Ohio has substantial interests at stake in this action, both as State *qua* State and on behalf of Ohio's coal operators, which include currently operating power plants, that will incur steep compliance burdens under the Rule.

The Rule directly affects the Ohio EPA's regulatory and enforcement obligations. In October 2023, the Ohio General Assembly enacted a statute obligating the Ohio EPA to develop a state-run, coal-combustion residual program. Ohio Rev. Code §3734.48(B). That program must incorporate the federal regulatory standards promulgated under 40 C.F.R. §257, *id.*, which, if this Rule is upheld, are now vastly more expansive and burdensome.

5

Ohio has a sovereign and "protectible legal interest in enforcing state laws and in regulating waste within [its] border." *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 8 (D.D.C. 2018); *see also Massachusetts v. EPA*, 549 U.S. 497, 519–20 (2007). This Rule interferes with that interest because it is unlawful and imposes staggering burdens on the State and its power plants and coal operators. For one thing, the EPA lacks statutory authority under the Act to regulate solid wastes unless present risk creates a "reasonable probability of adverse effects." 42 U.S.C. §6944(a). But the Rule imposes sweeping new requirements on sites that had any amount of "both CCR and liquids on or after October 19, 2015," without adequately assessing whether all such sites pose risks. 42 C.F.R. §257.53; 89 Fed. Reg. at 39,100. That failure to engage in individualized site-based determinations *alone* renders this rule unlawful. Ohio should not have to expend resources on implementing a Rule that may later be held unlawful and which has drastic adverse consequences for the State and its industries. Thus, it has a strong interest in intervening to challenge this Rule.

The Rule also affects numerous Ohio power plants and other coal operators across the State. Re-closing already-closed and maintained CCR sites at inactive facilities will impose severe costs on site owners. That is particularly true when juxtaposed against the risk posed by these sites—many of which were closed only after a determination that storage measures are sufficient to prevent groundwater

6

contamination and subject to continual maintenance post-closure. The EPA exacerbated the Rule's procedural deficiencies by providing a truncated 25-day comment period, made particularly inadequate given the staggering amount of information covered by the November 2023 notice of data availability.

### 3. Disposition of this action may impair Ohio's ability to protect its interests.

A movant has a "legally protectable" interest in an action when the movant will "gain or lose by the direct legal operation and effect of the judgment." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980) (citation omitted). As discussed above, a decision by this Court upholding the validity of the Rule will jeopardize Ohio's ability to protect its interests, and those of its industries and citizens, against the Rule in any subsequent action.

### 4. The current parties to the suit may not adequately represent Ohio's interests.

"[T]his last requirement for intervention [is] 'not onerous,'" and "a movant 'ordinarily should be allowed to intervene unless it is clear that the [existing parties] will provide adequate representation.'" *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) (quotations omitted). Movants "need only show that representation of [their] interest[s] 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. Dist. of Columbia*, 792 F.2d

7

179, 192 (D.C. Cir. 1986) (citations omitted). Ohio has met this "minimal" burden. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

As a State statutorily obligated to implement a CCR program and bound to protect the interests of its citizens, Ohio has a unique interest in this matter and is uniquely positioned to explain it. Ohio's sovereign interests are distinct from those advanced by industry petitioners and other States, who can offer no insight into Ohio's state-run CCR program and its implementation costs. *See Fund for Animals*, 322 F.3d at 736 (granting Mongolia's motion to intervene even though its interests overlapped with the interests of the federal defendants).

Ohio also cannot predict all the arguments of Petitioners or the EPA's responses. *See Nat'l Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (declining to predict when intervenors "might wish to urge before the Court" arguments different from those of the EPA). Ohio is in the best position to advocate the merits of its arguments, as the State has first-hand knowledge about the consequences to its own sovereign interests and the consequences to its citizens.

Ohio "should not need to rely" on others "to represent its interests" when it stands ready to represent itself. *Crossroads*, 788 F.3d at 321.

8

## CONCLUSION

For the foregoing reasons, the State of Ohio respectfully requests that the Court grant its motion to intervene on behalf of Petitioner.

Dated:  August 21, 2024

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER*
Solicitor General
  *Counsel of record*
MATHURA J. SRIDHARAN
KATIE ROSE TALLEY
Deputy Solicitors General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
thomas.gaiser@ohioago.gov

*Counsel for the State of Ohio*

9

## CERTIFICATE OF PARTIES

Pursuant to Circuit Rules 27(a)(4) and 28(a)(1)(A), I certify that the parties—including intervenors and amici curiae—are set forth below.

<u>Petitioner</u>: City Utilities of Springfield, Missouri

<u>Respondent</u>: Environmental Protection Agency and Michael S. Regan, in his official capacity, as Administrator of the U.S. Environmental Protection Agency

<u>Intervenors</u>: There are no intervenors at the time of this filing.

<u>Amici Curiae</u>: There are no amici curiae at the time of this filing.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed R. App. P. 32 (f) and (g), I hereby certify that the foregoing motion complies with the limitation of Fed. R. App. P. 27(d)(2)(A) and Circuit Rule 27(a)(2) because it contains 1,823 words, excluding exempted portions, according to the count of Microsoft Word.

I further certify that the motion complies with Fed. R. App. P. 27(d)(1)(E), 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook Font.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER
*Counsel for State of Ohio*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2024, I caused the foregoing to be electrically filed with the Clerk of the Court by using the Court's CM/ECF system. All registered counsel will be served by the Court's CM/ECF system.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER
*Counsel for State of Ohio*
