ORAL ARGUMENT NOT YET SCHEDULED

No. 24-1200 (and consolidated cases)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

City Utilities of Springfield, Missouri,
*Petitioner,*

v.

Environmental Protection Agency and Michael S. Regan, in his official capacity, as Administrator of the U.S. Environmental Protection Agency,
*Respondents.*

On Petition for Review of Action by the U.S. Environmental Protection Agency

## REPLY IN SUPPORT OF MOTION OF THE STATE OF OHIO TO INTERVENE IN SUPPORT OF PETITIONERS

DAVE YOST
Attorney General of Ohio

T. ELLIOT GAISER*
Solicitor General
 *Counsel of record
MATHURA J. SRIDHARAN
KATIE ROSE TALLEY
Deputy Solicitors General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
thomas.gaiser@ohioago.gov

*Counsel for State of Ohio*

## REPLY

In May of this year, the EPA promulgated a final rule titled "Disposal of Coal Combustion Residuals From Electric Utilities; Legacy CCR Surface Impoundments," 89 Fed. Reg. 38,950 (May 8, 2024) ("Rule") under Subtitle D of the Resource Conservation and Recovery Act of 1976. Several Petitioners filed suit challenging the Rule. The State of Ohio moved to intervene in support of Petitioners.

The EPA opposes Ohio's motion seeking intervention of right, or alternatively, to permissively intervene in support of Petitioners under Federal Rules of Appellate Procedure 15(d) and 27 and Circuit Rules 15(b) and 27. It argues that Ohio cannot intervene of right because, the EPA says, Ohio does not have Article III standing to pursue its interests in this litigation. And the EPA argues, regardless of whether Ohio has standing, this Court should *discretionarily* deny Ohio's request to permissively intervene. Both arguments are meritless.

### I. Ohio has standing to challenge the Rule and therefore should be allowed to intervene of right.

Begin with standing. As explained in its opening motion, Ohio must implement regulations "equivalent to" federal regulations. Ohio Rev. Code §3734.48(B). Through operation of this state law, Ohio has sovereign and fiscal interests against implementing an unlawful federal regulation that will also expand

dramatically the magnitude of its expenditures under its coterminous state plan. *See* Ohio Mot. 6–7.

The EPA claims that Ohio's standing is "manufactured" because Ohio can abandon its law mandating a coterminous state program and thus avoid the higher expenses associated with the Rule. EPA Opp.3–4. Not so. For one thing, this Court "has not treated a state's ability to change its laws to evade injury as precluding standing to challenge EPA's actions under the Act." *New Jersey v. EPA*, 989 F.3d 1038, 1046 (D.C. Cir. 2021). Instead, this Court has held the opposite: States are injured when the EPA's actions make the execution of state-run programs "more difficult and onerous," such as by "forcing" the States to "expend additional resources" operating state programs already in place. *Id.* (quotation omitted). That is the case here, where the Rule symmetrically inflicts harm on Ohio by forcing the State to expend more resources complying with the unlawfully overbroad Rule.

This precedent makes sense. "States have an interest, as sovereigns, in exercising 'the power to create and enforce a legal code.'" *Alaska v. U.S. Dep't of Transp.*, 868 F.2d 441, 443 (D.C. Cir. 1989) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601 (1982)). Recognizing that authority, this Circuit and others have concluded that States have standing to challenge federal laws that preempt existing state laws. *Id.*; *Ohio v. EPA*, 98 F.4th 288, 307 (D.C. Cir. 2024);

*see Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008); *Ohio ex rel. Celebrezze v. U.S. Dep't of Transp.*, 766 F.2d 228, 232–33 (6th Cir. 1985). If those decisions followed the EPA's logic, state-law preemption would never provide a basis for standing because the State could always withdraw the offending statute. The same goes here. The Rule "interfere[s] with [Ohio's] ability" to enforce Ohio Rev. Code §3734.48. *New Jersey*, 989 F.3d at 1049. That alone is sufficient to establish standing.

At any rate, a self-inflicted injury insufficient to support standing ordinarily comes about when a party voluntarily assumes an obligation *in response to* a perceived injury. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415–18 (2013); *Murthy v. Missouri*, 144 S. Ct. 1972, 1995 (2024); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 918 (D.C. Cir. 2015). That cannot be the case here, because Ohio's state-plan law was enacted well before this Rule went into effect and well before any injury was in sight. *See* Ohio Rev. Code §3734.48 (enacted October 3, 2023). In other words, Ohio's General Assembly imposed an obligation for the State's regulations to walk in line with federal regulations well before the promulgation of this Rule gave rise to the injuries flowing from it. *Cf. New Jersey*, 989 F.3d at 1047. The EPA acknowledges that timeline but dismisses that critical point *without citation*. The timing establishes that Ohio did not *manufacture* standing but rather, was injured when

3

the Rule interfered with the execution of its state law *after* that state law went into effect.

In addition to grounds for standing specific to Ohio, the Rule broadly injures every State's "protectible legal interest in enforcing state laws and in regulating waste within [its] border," *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 8 (D.D.C. 2019), by setting "minimum national standards" for the safe maintenance of coal-ash sites, 89 Fed. Reg. at 39047. Although States are not *required to* adopt these requirements into their state programs, any less-stringent state regulation would be futile as the sites within their borders will have to meet the federal standards anyway. These standards thus interfere with States' sovereign authority to regulate waste within their borders, for example, by taking away their ability to establish less stringent standards. The EPA's only response to this point drifts away from Ohio's argument by pointing out factual differences between *Waterkeeper* and this dispute that Ohio does not rely on.

Last, the EPA accuses Ohio of asserting standing on behalf of the coal industry in its State. For the just-discussed reasons, Ohio need not rely on a *parens patriae* theory for standing given it can establish, and has established, standing of its own based on injuries to its sovereignty and fisc.

4

In sum, because the EPA has failed to refute Ohio's clear standing to challenge the Rule, Ohio should be allowed to intervene of right.

## II. Alternatively, Ohio should be allowed to permissively intervene.

This Circuit has been unclear on whether Article III standing is required for permissive intervention. *Safari Club Int'l v. Salazar (In re Endangered Species Act Section 4 Deadline Litig.)*, 704 F.3d 972, 980 (D.C. Cir. 2013). If this Court thinks that standing is required, then, for the just-discussed reasons, Ohio has established that it has standing to intervene of right and permissively. The EPA's only counter, that Ohio does not have standing, is thus unavailing. *See* EPA Opp.6. But if standing is not required for permissive intervention and the matter is purely within the Court's discretion, *see In re Idaho Conservation League*, 811 F.3d 502, 515 (D.C. Cir. 2016) and *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998), then this Court should allow Ohio to permissively intervene for the reasons set forth in Ohio's motion to intervene. The EPA's arguments against exercising such discretion all fail.

The EPA provides no persuasive reason why this Court should not exercise its discretion to grant Ohio's request for intervention. *First*, it argues that Ohio does not have any unique interests to protect. But the fact that Ohio has a unique state law pegging its state regulations, and the expense of administering its state program,

5

to the Rule, alone, shows that Ohio has interests different from those of other Petitioners.

*Second*, the EPA argues that Ohio has not established why its arguments would not be duplicative of others. That flips this Court's presumption—to grant intervention unless it is "clear" that the existing parties "will provide adequate representation"—on its head. *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) (quotation omitted). That other parties can provide adequate representation for Ohio is not so clear here. For one thing, Ohio cannot predict, nor is required to predict, all of Petitioners' arguments or the EPA's responses to determine whether its arguments would be duplicative. *See Nat'l Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977). For another, Ohio's unique state program is enough to show how its interests could diverge from those of other litigants. And as a litigant before this Court, Ohio is aware of, and will follow, this Court's rules against repetitious arguments. Circuit Handbook 38–39. Should the Petitioners' arguments later prove sufficient to protect Ohio's interests, Ohio will rest on those.[1]

---

[1] Nevertheless, Ohio reserves its right to participate in briefing should this Court grant intervention. This Court recently directed "intervenor(s) intending to participate in support of petitioners" to notify the Court of their intent to participate in briefing. Order, Doc#2073011 (September 4, 2024). In accordance with that Order

6

At bottom, the EPA's entire argument against permissive intervention seems to rest on its mistaken view that the States are a monolithic entity, rather than distinct "laborator[ies]" of democracy, *see New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting), going as far as to chastise Ohio for not joining another State coalition. EPA Opp.2. While Ohio's interests may overlap with those of other States, perfect overlap is not guaranteed. And, again, Ohio "should not need to rely" on others "to represent its interests" when it stands ready to "represent itself." *Crossroads*, 788 F.3d at 321.

Last, Rule 24(b) already recognizes that permissive intervention by government officials should be treated with a "hospitable approach" because they are representatives of the "public trust." *Nuesse v. Camp*, 385 F.2d 694, 705–06 (D.C. Cir. 1967) (interpreting governmental applications for permissive intervention liberally). That principle applies in spades when a State seeks to intervene to defend its own sovereign interests and those of its industries and citizens. This Court should not hesitate to grant Ohio permissive intervention even if it disagrees with the State on intervention of right.

---

and to the extent it applies to Movant-Intervenor Ohio, Ohio reserves its right to participate in briefing.

7

## CONCLUSION

For the foregoing reasons, the State of Ohio respectfully requests that the Court grant its motion to intervene on behalf of Petitioners.

Dated: September 10, 2024

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER*
Solicitor General
 *Counsel of record*
MATHURA J. SRIDHARAN
KATIE ROSE TALLEY
Deputy Solicitors General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
thomas.gaiser@ohioago.gov

*Counsel for the State of Ohio*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed R. App. P. 32 (f) and (g), I hereby certify that the foregoing reply complies with the limitation of Fed. R. App. P. 27(d)(2)(C) and Circuit Rule 27(a)(2) because it contains 1,614 words, excluding exempted portions, according to the count of Microsoft Word.

I further certify that the motion complies with Fed. R. App. P. 27(d)(1)(E), 32(a)(5) and (6) because it has been prepared in 14-point Equity Font.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER
*Counsel for State of Ohio*

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court by using the Court's CM/ECF system. All registered counsel will be served by the Court's CM/ECF system.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER
*Counsel for State of Ohio*
